UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 10-56-KSF

UNITED STATES OF AMERICA                                               PLAINTIFF

v.                                    **OPINION & ORDER**

TICO JACQUES SMITH                                                    DEFENDANT

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the motion of the defendant, Tico Jacques Smith, to suppress any and all evidence obtained as a result of a traffic stop on February 5, 2010. Specifically, Smith argues that the evidence should be excluded from the trial of this matter because it was confiscated by police during a traffic stop which was in violation of applicable law. The United States filed a response in opposition to the motion and the Court heard argument on July 23, 2010. At the conclusion of that hearing, the Court granted Smith's request for leave to file a supplemental brief. The defendant filed his supplemental brief and this matter is ripe for review.

I.      **FACTUAL BACKGROUND**

As the undersigned noted at the close of the hearing, the credibility of the witnesses is essential to the determination in this matter. The United States called Officer Gary Thurman, arresting officer, to testify about his recollection of the stop. Smith called Jamie Gray, driver of the car, and Chastity Hawkins, a passenger in the car to testify on his behalf.

Officer Thurman has been an officer with the Lexington Division of Police for three years. Prior to joining the Lexington Division of Police, he served as Military Police and worked at the Fayette County Detention Center. During his three years with the Lexington Division of Police, he

has been assigned to a beat in the Central Sector. This area is known for narcotics and prostitution. He is familiar with the residents and the vehicles in the area. Officer Thurman's testimony was highly credible, and he impressed the undersigned with his professional, mild-mannered and non-adversarial demeanor. Conversely, the testimony of Ms. Gray and Ms. Hawkins is not credible for several reasons. Their versions of the events were remarkably similar given the lapse of time making the testimony appear rehearsed and contrived. Further, Ms. Gray has a long term friendship with Smith which makes her interested in protecting him, and Ms. Gray admitted to having a violent history with police and to drug use. Thus, based on Officer Thurman's testimony at the hearing, the Court finds the facts to be as set forth below.

During the early morning hours of February 5, 2010, Officer Thurman was patrolling between the areas of Fifth and Smith Streets and Fourth and Chestnut Streets when he noticed that he had passed an unfamiliar Buick Regal several times in brief succession and, given what he knew about the patterns of drug trafficking in the area, he decided to investigate further. He began to follow the vehicle and noticed that the driver was not wearing a seatbelt so he initiated a traffic stop at 1:29 a.m. He signaled nearby officers, Officer Rotherman and Officer Shannon, who arrived at approximately 1:31 a.m. and 1:32 a.m.

After initiating the stop, Officer Thurman noticed that in addition to the four adults in the vehicle, there was a child unrestrained in the back seat. Upon review of the identification provided by the passengers, Officer Thurman recognized the front passenger as Tico Smith because he had arrested him a few days prior in connection with a fight. Smith had charged him with a drug offense in connection with that arrest. Officer Thurman asked Smith why he was in Lexington and Smith replied that he was "staying out of trouble."

A moment later, Officer Rotherman signaled to Officer Thurman that he saw something and shined his flashlight back into the vehicle, illuminating a marijuana cigarette in plain view in the console area. The officers then asked the driver and passengers to exit the vehicle. The officers separated the two and Officers Thurman and Rotherman began questioning Smith. Shortly after Smith got out of the vehicle, he began making gestures with his hand along his front waistband. When the officers told him to stop and keep his hands away from his waist, he said he was reaching for his cellular telephone. After he made another such gesture, the officers reached to secure Smith. He was asked if he had any weapons and he said he had a firearm. He was immediately restrained and the firearm was discovered under his shirt. Subsequently, Smith was disarmed. After Officer Thurman confirmed that Smith was a felon, he was arrested. Ms. Gray was given citations for marijuana and seatbelt/restraint violations.

Smith has a different version of the events. Ms. Gray testified at the hearing that the officers gave a citation to the driver for the restraint violations and then asked to search the car. She said that despite her refusal of consent, the officers proceeded to search the car and found the marijuana cigarette. She claims that the cigarette was under the drink holder and was not in plain view. She said that prior to and during the search of the car Smith was taken out of the car and placed in handcuffs. Ms. Hawkins' version of the facts was similar to Ms. Gray's version.

## II. ANALYSIS

There seems to be no dispute that the initial stop for failure to wear a seatbelt was lawful. Smith's Motion focuses on the duration of the stop and the questioning that, he says, was unrelated to the purpose of the stop. Smith contends that the evidence of the firearm is subject to suppression because the officers improperly continued the stop after the purpose of the stop was complete,

3

without having reasonable suspicion to justify the further detention. The United States argues that the detention was not continued beyond the purpose of the initial stop and that it was within the purview of the officers to ask Smith to step out of the car as part of the initial stop. Even if the stop was continued beyond its original purpose, the United States argues that Officer Thurman had reasonable suspicion to justify continued detention for purposes of investigating the suspected marijuana cigarette. Moreover, the officers were required to detain the driver until the improper restraint of the child could be resolved.

A lawful traffic stop may become unlawful "if it is prolonged beyond the time reasonably required to complete that mission." *United States v. Bell*, 555 F.3d 535, 541 (6th Cir. 2009). Further, "any subsequent detention after the initial stop must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). "Once the purposes of the initial traffic stop [are] completed, there is no doubt that the officer [can]not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995).

The series of events between the initial stop and the issuing of the citation can be examined to determine whether, during this interval, the officers developed reasonable suspicion to further detain Smith. *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008). "If the detention was proper, then the second question is 'whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and surrounding circumstances.'" *Id.* at 551-52 (quoting *United*

4

States v. Caruthers, 458 F.3d 459, 464 (6th Cir. 2006).

Officer Thurman stopped the vehicle for the driver's failure to wear a seatbelt. As he approached the car, he noticed an unrestrained child. While Officer Thurman was gathering information from the driver necessary for processing the citation for her failure to wear a seatbelt and failure to restrain the child, Officer Rotherman noticed the marijuana cigarette, giving the officers reasonable suspicion of criminal activity and justifying expansion of the detention beyond the original scope. Thus, it was permissible for them to investigate further. It was reasonable for the officers to have the defendant exit the car while they investigated further.

Moreover, the search of Smith's person was lawful. Since the investigatory stop was lawful, the police need not have, in addition, cause to believe any occupant is involved in criminal activity to justify a patdown, however, police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous. *Arizona v. Johnson*, 129 S.Ct. 781 (2009). Here, the Officers had reasonable suspicion that Smith was armed and dangerous because he made motions to his waistband and did not follow the officers' instructions to stop doing so. Thus, the frisk that led to the discovery of the firearm was lawful.

## III. CONCLUSION

Accordingly, **IT IS ORDERED** that the defendant's Motion to Suppress [DE 15] is **DENIED**.

This July 28, 2010.



**Signed By:**
*Karl S. Forester* KSF
**United States Senior Judge**